## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BILL A. M.,                                    )
                                               )
                    Plaintiff,                 )
                                               )
vs.                                            )          Case No. 22-CV-00154-JFJ
                                               )
KILOLO KIJAKAZI,                               )
Acting Commissioner of Social Security,        )
                                               )
                    Defendant.                 )

## OPINION AND ORDER

Plaintiff Bill A. M. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.    General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)."  20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 45-year-old male, applied for Title II disability insurance benefits on December 2, 2019, alleging a disability onset date of October 11, 2016. R. 15, 182-183. Plaintiff claimed he was unable to work due to conditions including back problems, degenerative disc disease, difficulty walking, stroke, stomach issues, 9 inches of colon removed, anxiety, and high cholesterol. R. 210. Plaintiff's claim for benefits was denied initially on April 24, 2020, and on reconsideration on September 30, 2020. R. 85-111. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on August 26, 2021. R. 43-78. The ALJ issued a decision on September 10, 2021, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy. R. 15-37. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2019.  R. 17.  At step

one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period

from his alleged onset date of October 11, 2016, through the date last insured.  *Id.*  At step two,

the ALJ found that, through the date last insured, Plaintiff had the following severe impairments:

degenerative disc disease, diverticulitis, bipolar disorder, and anxiety disorder.  R. 18.  The ALJ

found Plaintiff's medically determinable impairments of heel spurs/plantar fasciitis, left ankle

tendon rupture, obesity, migraines, mixed irritable bowel syndrome, hypothyroid, vertigo,

hypertension, insomnia, restless leg syndrome, sleep apnea, hyperlipidemia, and Tourette's to be

non-severe.  *Id.*

At step three, the ALJ found that Plaintiff had no impairment or combination of

impairments that was of such severity to result in listing-level impairments.  R. 20.  In assessing

Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had

moderate limitations in all four areas of (1) understanding, remembering, or applying information;

(2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or

managing oneself.  R. 21-22.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ

concluded that Plaintiff had the RFC to perform a range of sedentary work as follows:

> The claimant was able to lift, carry, push, or pull up to 10 pounds frequently and
> 20 pounds occasionally.  He was able to sit up to 6 hours in an 8-hour workday;
> and able to stand and/or walk up to 4 hours in an 8-hour workday.  The claimant
> was occasionally able to climb ramps or stairs, stoop, kneel, crouch or crawl.  The
> job should not have involved climbing ladders, ropes, or scaffolds.  The claimant
> was able to understand, remember and perform simple, repetitive tasks consistent
> with SVP 1 and SVP 2 work with a reasoning level of 2.  He was able to sustain
> attention and concentration for up to 2 hours at a time when performing simple,
> repetitive tasks.  The claimant was able to sustain the mental demands associated
> with performing simple, repetitive tasks throughout an ordinary workday and
> workweek.  He was able to interact with supervisors as needed to receive work
> instructions; and able to work in proximity to coworkers but the job should not have

involved teamwork or other work where close communication or cooperation with coworkers was needed in order to complete work tasks.  The job should not have involved interacting with the general public.  The job should involve no more than ordinary and routine changes in work setting or work duties.

R. 23.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

R. 35.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled sedentary jobs, such as Clerical Sorter, Assembler, and Polisher.  R. 36-37.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 37.  Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy.  *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled through the date last insured.

**III.   Issues**

Plaintiff raises five points of error in his challenge to the denial of benefits, which the Court re-organizes into three: (1) the ALJ failed to fully and fairly develop the medical evidence regarding Plaintiff's degenerative disc disorder, severe sleep apnea, low thyroid, mental health, and stroke symptoms; (2) the ALJ's consistency analysis, including evaluation of Plaintiff's pain, was flawed; and (3) the ALJ's RFC was unsupported by substantial evidence.  ECF No. 13.

**IV.   Analysis**

   **A.   ALJ Adequately Developed the Record**

Plaintiff contends the ALJ failed to develop the record regarding Plaintiff's various physical and mental impairments, including degenerative disc disorder, low thyroid, anxiety/PTSD, stroke symptoms, severe sleep apnea, night terrors, restless leg syndrome, anemia, hypothyroid disorder, and other fatigue-related disorders.  Most specifically, Plaintiff argues the ALJ failed to analyze the impacts of Plaintiff's "past untreated stroke" on his functioning.  ECF No. 13 at 7.  Plaintiff points to two records, which indicated he was hospitalized in January 2013

for functional impairment, including confusion and disorientation (R. 286), and he underwent a routine CT brain scan prior to December 2019 showing an "old stroke" at the right basal ganglia (R. 3697). Plaintiff further argues his multiple hospitalizations would have resulted in inability to maintain competitive work, as he would have missed too many days of work. Plaintiff further refers to evidence supporting "multiple complaints regarding severe acute abdominal pain, back pain, headaches, anxiety, depression, sleep apnea, and chronic insomnia," with a citation only to "*infra*." ECF No. 13 at 6.[1] Plaintiff argues the ALJ should have developed the record by using "opinion evidence obtained from a physical and mental consultative examinations [sic] and an expert medical witness" to determine whether Plaintiff's symptoms would prevent him from working full time. ECF No. 13 at 8.

The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

The Court finds the ALJ adequately developed the record. The Court rejects Plaintiff's arguments that the ALJ lacked sufficient evidence on which to base an RFC. Regarding Plaintiff's mental impairments, the ALJ found Plaintiff's bipolar disorder and anxiety disorder to be severe

---

[1] The Court assumes Plaintiff's counsel intended to use a "*supra*" citation, which refers to material that has already appeared in the document, rather than "*infra*," which refers to material appearing later in the document. *See* "*infra*," "*supra*," *Black's Law Dictionary* (11th ed. 2019).

impairments, and she fully considered the functional impairments resulting from Plaintiff's mental impairments during the relevant period of October 2016 to December 2019. R. 18, 30-35. The ALJ further considered the agency reconsideration psychological reviewer's opinion and found it "generally persuasive." R. 32. The ALJ discussed many of Plaintiff's mental health records from the relevant period, and she was able to determine a mental RFC for Plaintiff based on the available records.

As for records specifically identified by Plaintiff in support of this argument, Plaintiff's hospitalization in January 2013 falls far outside the relevant period beginning October 2016, and it is unclear when the cited CT brain scan was performed or what were the implications of an "old stroke" at the right basal ganglia. Plaintiff states in his brief that the CT scan showed an "old lacunar infarct stroke," and he argues a "lacunar infarcts" is a significant event, but the record does not state this language. R. 3697.[2] As for the other numerous impairments Plaintiff identifies, Plaintiff's argument is vague and fails to refer to any specific evidence. The citation to "*infra*" is meaningless and unhelpful. If the Court assumes that Plaintiff intended to refer to his six-page summary of medical records at the outset of the opening brief, ECF No. 13 at 1-6, this is not sufficient to constitute a citation to record evidence in support of Plaintiff's arguments. It is not the Court's duty to comb through Plaintiff's voluminous summary of evidence regarding all his conditions to identify relevant citations in support of his argument.

Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. The ALJ certainly considered

---

[2] In his summary of medical evidence at the beginning of his opening brief, Plaintiff points to a November 2015 CT scan showing "[s]table 1 cm lacunar infarct right basal ganglia." R. 1077. It is unclear whether the later records are referring to this particular CT scan. Even if this is the case, the CT scan was taken almost a year prior to the alleged onset date in October 2016, and Plaintiff does not identify evidence linking this finding to his behavior, instead only speculating that such a stroke would likely affect Plaintiff's behavior. ECF No. 13 at 7.

Plaintiff's physical and mental impairments, including his multiple hospitalizations during the relevant period, and the ALJ assessed RFC limitations to account for his numerous physical and mental conditions. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination). The Court rejects Plaintiff's contention that the ALJ was obliged to obtain additional opinion evidence to determine whether Plaintiff could perform full-time work despite his symptoms.

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Here, Plaintiff was represented by counsel at the hearing but did not challenge the sufficiency of the record at that time or request a consultative examination related to his physical or mental impairments. R. 43-78, 47 (Plaintiff's attorney affirmatively stated the record was complete). *See Hawkins*, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

**B.    ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's

symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

### 1.   ALJ's Decision

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

evidence in the record.  R. 25.  As support, the ALJ pointed to inconsistencies between Plaintiff's

and his wife's function reports indicating inability to attend or function at a job.  R. 26.  In

particular, the ALJ pointed to Plaintiff's wife's statement in March 2017 to a hospital social worker

that Plaintiff had been "completely independent" and had a lawn care business prior to the current

onset of sepsis/tonsilitis.  *Id.* (citing R. 2759, 2762).  These statements contrasted with her February

2020 third-party function report that Plaintiff was unable to hold a job due to pain and inability to

focus, and with Plaintiff's statements that he was unable to find a doctor and "almost died" after

his 2016 surgery.  *Id.* (citing R. 217-224, 231).  The ALJ further explained that Plaintiff did have

severe diverticulitis but that surgery in December 2016 was largely successful.  R. 28 (citing

R. 2330, 2334).  Two weeks after surgery, Plaintiff's symptoms had improved, he was off pain

medications, and he was doing "fairly well."  *Id.* (citing R. 4341).  At the time of surgery in

December 2016, Plaintiff was active, independent, and running a lawn care business, except when

he had flareups with diverticulitis.  *Id.* (citing R. 1948, 1956).  As further support, the ALJ noted

that CT imaging in March 2017 showed moderate diverticulosis but only minimal diverticulitis,

and hospital notes indicated Plaintiff had recently purchased a camper that he had been remodeling

with his wife.  R. 29 (citing R. 2757).  In August 2017, CT imaging showed stable mild

diverticulosis of the descending colon and no adjacent inflammation, and stable postoperative

changes of the sigmoid colon.  *Id.* (citing R. 2875).

The ALJ also discussed other relevant x-rays and CT scans.  In late August 2017, Plaintiff

was injured when loading a riding lawn mower onto a trailer, and x-rays showed no acute fracture,

mild C5-C6 and C6-C7 degenerative disc disease, and moderate to severe L5-S1 degenerative disc

space narrowing with vacuum phenomenon.  *Id.* (citing R. 2893-2897).  A CT scan in December

2017 revealed L5-S1 degenerative disc disease was stable, and CT scan of the abdomen and pelvis

showed postsurgical changes in the sigmoid colon but no obstruction or mucosal thickening.  *Id.* (citing R. 2997, 3000).  In January 2018, Plaintiff presented to the hospital with severe abdominal pain (R. 3017), and in March 2019, a CT revealed possible mild descending colon acute diverticulitis (R. 3375).

After summarizing this medical evidence, the ALJ concluded that the post-surgical imaging and spinal imaging were not fully consistent with the disabling level of pain Plaintiff alleged, with hospital treatment for abdominal symptoms becoming less frequent following Plaintiff's surgery.  R. 29.  In October 2019, physical examination showed no lower extremity swelling, but tenderness to palpation of both feet, and sacroiliac tenderness and pain with movement of the pelvic bones/sacroiliac joints.  *Id.* (citing R. 3493-3494).  Plaintiff had full range of motion of the hips, negative straight-leg raise testing, and mild tenderness to palpation over the abdomen.  *Id.* (citing R. 3493-3494).

As for Plaintiff's mental impairments, the ALJ explained that, as of October 2016, Plaintiff was not on any psychotropic medications, and he needed outpatient psychiatric treatment.  R. 30 (citing R. 1658).  The ALJ reviewed Plaintiff's history of mental examination findings, noting that there was limited evidence in the record of mental impairment complaints leading up to 2019. R. 20.  During the relevant period, Plaintiff's modality of treatment for mental impairments was through primary care with Gerald Pribil, M.D.  Dr. Pribil prescribed sertraline as an antidepressant in April 2018, and Dr. Pribil noted Plaintiff's anxiety and depression improved with sertraline. R. 30 (citing R. 3557, 3559).  In June 2018, Plaintiff's anxiety and depression were under control, although Plaintiff reported night terrors.  *Id.* (citing R. 3544).  In September 2019, depression with anxiety and bipolar disorder were stable with current medication.  *Id.* (citing R. 3499).  Later in September 2019, Plaintiff and his wife went to the hospital for a bipolar manic episode, when he

needed medication after flushing his medication. *Id.* (citing R. 3497). Plaintiff began treatment at Grand Lake Mental Health Center in June 2019 for depression (R. 4088), but Plaintiff did not return until July 2020, after the date last insured. R. 31.

### 2.    Analysis

Plaintiff alleges the above-described consistency analysis was insufficient, because (1) the ALJ failed to give full credit to Plaintiff's allegations of pain and resulting limitations; and (2) the ALJ improperly relied on Plaintiff's suspected non-compliance with treatment. ECF No. 13 at 8-14. The Court rejects both arguments and finds that the ALJ's consistency analysis was proper.

### a.    Alleged Pain

Plaintiff argues that the ALJ minimized evidence of Plaintiff's pain and misrepresented the evidence by noting that Plaintiff was reported to be a "very pleasant, high functioning" individual when admitted for diverticulitis symptoms in January 2016. R. 26 (citing R. 1132). Plaintiff contends the ALJ overlooked other evidence indicating Plaintiff experienced anxiety and outbursts at times and left care against medical advice. ECF No. 13 at 9-10 (citing R. 344, 347, 833, 854-855, 1258, 1396, 1631, 1807-1809, 2154, 2173-2184, 3775). Plaintiff also generally contends the ALJ failed to properly evaluate Plaintiff's headache pain, colon pain, and limitations from spinal disorder and foot spurs. Plaintiff cites a January 2013 hospital record showing a history of headaches, back pain, diverticulosis, and impaired cognitive function (R. 292, 307); a November 2015 CT scan showing sigmoid diverticulitis changes (R. 4097); and a June 2016 CT scan indicating moderate to marked degenerative lumbar spinal changes in June 2016 (R. 918).[4]

---

[4] Plaintiff argues in a separate point of error that the ALJ "failed to consider the effects on Claimant's ability to maintain full-time work without excessive breaks or missed days as a result of his impairments, pain and mental health disorders." ECF No. 13 at 14. Plaintiff cites no additional evidence in support of this allegation of error, and the Court finds that review in this section of the ALJ's consistency findings related to pain are sufficient to address and deny this allegation without separate discussion.

The Court identifies no error based on the ALJ's discussion of Plaintiff disposition or the ALJ's failure to cite each of the above-cited records.  First, the ALJ did discuss Plaintiff's anxiety and depression, including discussion of a bipolar manic episode in September 2019.  R. 30 (citing R. 3497).  The ALJ is not required to discuss every piece of evidence in the record.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted).  The ALJ's notation of Plaintiff's "pleasant, high functioning" disposition in January 2016 is not a misrepresentation of the record.  *See* R. 1132.  In addition, the ALJ correctly noted from the same record that Plaintiff was suffering from "excruciating pain" at that hospital visit in January 2016.  R. 26 (citing R. 1132).

Second, Plaintiff overlooks the ALJ's finding that, while Plaintiff's abdominal pain symptoms continued until surgery in December 2016, surgery improved his symptoms significantly, and Plaintiff was still able to continue working with a lawncare business in December 2016.  R. 28-29.  The majority of the records Plaintiff cites fall outside the relevant period beginning October 11, 2016, and all of the cited records pre-date Plaintiff's abdominal surgery, which significantly relieved his diverticulitis symptoms.  The ALJ also considered Plaintiff's foot pain and headache pain, finding both non-severe during the relevant period.  R. 18-19.  The ALJ found Plaintiff's degenerative disc disease to be a severe impairment during the relevant period, reviewing records from the relevant period and imposing physical RFC limitations based on both degenerative disc disease and diverticulitis.  R. 29.

The Court finds the additional records Plaintiff cites do not overwhelm the ALJ's consistency findings, nor do they conclusively support all his subjective complaints of pain. Contrary to Plaintiff's argument, the ALJ's analysis is not indicative of impermissible "cherry

picking." Again, Plaintiff's vague citation to other medical records with an "*infra*" citation is unavailing, as it is not the Court's duty to wade through Plaintiff's general medical summary for supportive documentation.

### b.      Alleged Noncompliance with Treatment

Plaintiff objects to the ALJ's consistency finding that Plaintiff's mental impairments were not as severe as alleged. The ALJ explained that, while Plaintiff suffered from bipolar disorder, depression, and PTSD, he did not take psychotropic medications for much of the relevant period, and he did not seek specialized mental health treatment during most of the relevant period. R. 30. Plaintiff argues that his mental impairments were the very reason he did not seek more aggressive mental health treatment. ECF No. 13 at 13-14. Plaintiff contends he "exercises poor judgment and follow-through because of his mental health and non-exertional pain conditions," and the ALJ unfairly used the features of his bipolar disorder and PTSD against him by expecting him to use appropriate judgment in seeking treatment. *Id.* at 14. Plaintiff cites records indicating he did not have health insurance, could not afford health premiums or costs for his diverticulitis and other conditions, and did not have a primary care physician due to lack of insurance (R. 749, 1140, 3559, 3572).

Plaintiff's argument fails. Plaintiff has not pointed to any evidence suggesting that his failure to seek mental health treatment during the relevant period was the result of a mental impairment. *See Adams v. Colvin*, 553 F. App'x 811, 815-16 (10th Cir. 2014) (rejecting argument that ALJ should not have relied on claimant's noncompliance with mental health treatment and use of marijuana and alcohol as evidence that he was not credible, because claimant failed to cite any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental health treatment were the result of his mental illnesses). To the contrary, the record during the relevant

period suggests that Plaintiff's mental health conditions were generally under control.  *See* R. 3574

(February 2018 progress note stating Plaintiff's depression with anxiety were "well managed with

no current medication" and "mood stable"), R. 3544 (June 2018 progress note indicating Plaintiff's

"anxiety/depression are controlled"), R. 3499 (September 2019 progress note indicating

depression with anxiety and bipolar disorder were stable and Plaintiff should continue current

medication and therapy).  While Plaintiff cites records indicating he could not afford certain

medical treatments due to lack of insurance, none of those records suggest he did not seek *mental*

*health treatment* due to cost of such treatment.

The Court finds the ALJ's consistency discussion satisfies SSR 16-3p.  Plaintiff only asks

the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### C.      ALJ's RFC Was Supported by Substantial Evidence

Plaintiff argues the ALJ's RFC did not adequately account for his pain, mental health

limitations, and absences from work due to his many hospitalizations.  Although his argument is

vague, Plaintiff appears to contend the ALJ needed a medical opinion to support the RFC.  The

ALJ did consider a psychological RFC opinion from the state agency reconsideration reviewer to

support the mental RFC (R. 108), which the ALJ found generally persuasive and partially adopted

into the RFC.  R. 32.  Because Plaintiff does not challenge the ALJ's reliance on this psychological

opinion, the Court construes Plaintiff's argument to challenge the ALJ's physical RFC based on

lack of a supportive medical opinion.

Plaintiff's argument is unpersuasive.  First, the ALJ's RFC need not correspond directly to

a specific medical opinion.  *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding

"there is no requirement in the regulations for a direct correspondence between an RFC finding

and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category"). Second, as explained above, the ALJ reviewed Plaintiff's voluminous record and cited evidence in support of the physical RFC. The ALJ also reviewed Plaintiff's allegations of pain and mental health impairments, and his history of hospitalization for diverticulitis. In particular, the ALJ considered Plaintiff's functional improvement after his December 2016 surgery for diverticulitis. R. 28.

Plaintiff fails to show any support for functional limitations that exceed the ALJ's RFC. *Cf. Mallory v. Colvin*, No. 13-1426-SAC, 2015 WL 1204991, at *4 (D. Kan. Mar. 17, 2015) (finding ALJ's physical RFC unsupported by substantial evidence where there was "absolutely no medical evidence regarding plaintiff's physical RFC," and ALJ's decision was "devoid of any identifiable discussion explaining how the ALJ arrived at his physical RFC findings based on the evidence, or how the evidence supported his physical RFC findings"). As a result, the ALJ was not required to include Plaintiff's proposal to add "15% absences from full time work" due to hospitalizations. ECF No. 13 at 15. The ALJ also was not required to eliminate any of the step-five jobs from consideration. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record"). Again, Plaintiff asks the Court to impermissibly re-weigh the evidence.

## V.   Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 25th day of July, 2023.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**